UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT KAY, individually and on behalf of all others similarly situated, | ) ) No. ) |
| Plaintiff, | ) ) CLASS ACTION COMPLAINT ) |
| v. | ) ) |
| LIONBRIDGE TECHNOLOGIES, INC., RORY J. COWAN, EDWARD A. BLECHSCHMIDT, MICHAEL DALLAS, GUY L. DE CHAZAI, SUSAN KANTOR, PAUL A. KAVANAGH, JACK NOONAN, JAMES A. QUELLA, CLAUDE P. SHEER, H.I.G. CAPITAL, LLC, LBT ACQUISITION, INC., and LBT MERGER SUB, INC. | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) DEMAND FOR JURY TRIAL ) |

Plaintiff Robert Kay ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this class action on behalf of the public stockholders of Lionbridge Technologies, Inc. ("Lionbridge" or the "Company") against Lionbridge's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder, arising out of their sale of the Company to H.I.G. Capital, LLC ("HIG Capital"), LBT Acquisition, Inc. ("Parent"), and LBT Merger Sub, Inc. ("Merger Sub") (collectively, "HIG").

2. On December 12, 2016, the Company entered into an agreement and plan of merger (the "Merger Agreement") with HIG pursuant to which HIG will acquire all outstanding shares of

1

Lionbridge with Lionbridge stockholders receiving $5.75 per share in cash (the "Proposed Transaction").

3. On January 5, 2017, defendants filed a Preliminary Proxy Statement ("Proxy") with the United States Securities and Exchange Commission ("SEC") in which Lionbridge recommended stockholders vote in favor of the Proposed Transaction. The Proxy fails to provide the Company's stockholders with material information and/or provided them with materially misleading information thereby rendering the stockholders unable to make an informed decision as to how to vote at the special stockholder meeting.

4. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction unless and until the Defendants make corrective disclosures or, alternatively, rescission of the Proposed Transaction in the event defendants are able to consummate it.

## PARTIES

5. Plaintiff is and has been at all relevant times the owner of shares of Lionbridge.

6. Defendant Rory J. Cowan ("Cowan") is the director, Chairman, and Chief Executive Officer ("CEO") of Lionbridge.

7. Defendant Edward A. Blechschmidt ("Blechschmidt") has been a director of Lionbridge since February 2003. Blechschmidt is Chair of the Audit Committee.

8. Defendant Michael Dallas ("Dallas") has been a director of Lionbridge since October 2014.

9. Defendant Gary L. de Chazal ("de Chazal") has been a director of Lionbridge since February 1998. de Chazal is a member of the Audit Committee.

10. Defendant Paul A. Kavanagh ("Kavanagh") has been a director of Lionbridge since December 1996. Kavanagh is a member of the Nominating and Compensation Committee.

11. Defendant Jack Noonan ("Noonan") has been a director of Lionbridge since April 2010. Noonan is a member of the Audit Committee.

12. Defendant James A. Quella ("Quella") has been a director of Lionbridge since November 2015. Quella is a member of the Nominating and Compensation Committee.

13. Defendant Claude P. Sheer ("Sheer") has been a director of Lionbridge since March 1999. Sheer is the Chair of the Nominating and Compensation Committee.

14. Defendants Cowan, Blechschmidt, Dallas, de Chazal, Kavanagh, Noonan and Quella are collectively referred to as "Individual Defendants" and/or the "Board."

15. Defendant Lionbridge is a Delaware corporation with its principal executive offices located at 1050 Winter Street, Suite 2300, Waltham, Massachusetts 02451. Lionbridge's common stock trades on the NasdaqGS under the ticker symbol "LIOX."

16. Defendant H.I.G. Capital is a Miami-based global private equity and alternative assets investment firm with $21 billion of equity capital under management.

17. Defendant Parent is a Delaware corporation.

18. Defendant Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Parent.

**JURISDICTION AND VENUE**

19. This Court has subject matter jurisdiction under Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331 (federal question jurisdiction), as this Complaint alleges violations of Rule 14(a).

20. Venue is proper in this Court because the Defendants reside, are found, have agents and regularly transact business in this District as provided in 28 U.S.C. § 1391(b) and (c).

Lionbridge's headquarters are located at 1050 Winter Street, Suite 2300, Waltham, Massachusetts 02451.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Lionbridge common stock and their successors in interest, except Defendants and their affiliates (the "Class").

22. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. As of December 9, 2016, Lionbridge had approximately 61.1 million shares outstanding.

(b) Questions of law and fact are common to the Class, including: (i) whether Defendants violated Sections 14(a) and 20(a) of the Exchange Act in connection with the Proposed Transaction; (ii) whether Defendants have failed to engage in a fair process and obtain the best price available for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction; (iii) whether Plaintiff and the other members of the Class were irreparably harmed when the transactions complained of herein were consummated; (iv) whether HIG aided and abetted the Individual Defendants' breaches; and (v) whether the Class is entitled to recessionary damages as a result of defendants' wrongful conduct.

(c) Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d) Plaintiff's claims are typical of those of the other members of the Class.

(e) Plaintiff has no interests that are adverse to the Class.

(f) The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g) Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h) Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy

## FURTHER SUBSTANTIVE ALLEGATIONS

*Background of the Company*

23. Lionbridge is the world's number one globalization company, delivering industry-leading translation and localization, digital marketing, global content management, and application testing services to the world's top brands.

24. Lionbridge enables more than 800 world-leading brands to increase international market share, speed adoption of products and effectively engage their customers in local markets worldwide. Using innovative cloud technology platforms and Lionbridge's global crowds of over 100,000 professional cloud workers, the Company maintains solution centers in 28 countries and is based in Waltham, Massachusetts. The Company has managed over 1.5 million client web pages, delivered 18 billion emails, and performed 437 million tests.

25. In 2016, the Company reported $550 million in revenue and 95% customer retention.

*The Conflicted Sales Process*

26.     The sales process was initiated in December 2015 when Lionbridge received inquiries from two strategic parties ("Party X" and "Party Y") regarding an interest in a potential business combination.  On December 17, 2015, the Company entered into a confidentiality agreement with Party X.  The Proxy states the confidentiality agreement contained "customary non-disclosure and non-use provision."

27.     On February 5, 2016, the Company entered into a confidentiality agreement with Party Y, which in addition to "customary non-disclosure" and "non-use" provisions also contained a standstill provision.  According to the Proxy, the standstill provision would expire upon the public announcement that Lionbridge entered into a merger agreement.

28.     In early February, Party X indicated it was no longer interested in a strategic transaction and discussions between the parties terminated.  Similarly, in mid-March Party Y indicated it was no longer interested and discussions between the parties terminated.

29.     On April 5, 2016 and April 11, 2016, the Company entered into confidentiality agreements with Party A and HIG, respectively.  As with Party Y, the confidentiality agreements contained "customary non-disclosure" and "non-use" provisions and also contained a standstill provision that would expire upon the public announcement that Lionbridge entered into a merger agreement.

30.     On April 27 and April 28, 2016, the Board met to consider HIG and Party A's interest in the Company.  Defendant Cowan provided the Board with a forecast of results of operations for 2016 and a preliminary forecast for future revenues and adjusted EBITDA.  The Board further established a special committee (the "Special Committee") to review any strategic opportunities presented to the Board due to anticipated conflicts of interest that existed with

Lionbridge's management team.  The Board further engaged Union Square Advisors LLC ("Union Square") to advise on strategic opportunities.

31.     On June 19, 2016, the Company entered into a confidentiality agreement with Party B, which included customary non-disclosure, non-use and standstill provisions which would expire upon the public announcement that Lionbridge entered into a merger agreement.

32.     On July 8, 2016, the Board formed and appointed Defendants de Chazal, Blechschmidt and Sheer to the Special Committee.  According to the Proxy, the Special Committee was delegated the authority to:

> (a) consider and evaluate all proposals that we might receive in connection with a possible sale or other business transaction involving all or substantially all of our equity or assets on a consolidated basis, (b) participate in and direct the negotiation of the material terms and conditions of any such transaction, (c) consider any alternatives to any such transaction, including our continuing to operate as an independent company, and (d) recommend to our Board of Directors the advisability of entering into a definitive agreement with respect to any such transaction.

33.     The Special Committee was a sham however, as Defendant Cowan attended and participated in every Special Committee meeting despite not being a member.  For instance, just one week after the Special Committee's creation, Party C contacted Defendant Cowan about a potential strategic transaction.  Company D also contacted the Company at this time.  Then, on July 14, 2016 during a Special Committee meeting, the Special Committee extended an "invitation" to Defendant Cowan to participate, which he accepted.  At this meeting, the Company reviewed "preliminary indications of interest that [it] had received."  The Proxy, however, fails to state which parties submitted such indications or the value of such indications.

34.     On July 12, 2016, Party B informed the Company that it was no longer interested in a strategic transaction.

35. On July 22, 2016, HIG submitted a preliminary indication of interest to acquire the Company for $5.50 per share, which included a request to engage in exclusive negotiations regarding a business combination with HIG only for a period of at least 30 days.

36. On July 26, 2016, the Special Committee held a meeting, once again extending a special invitation to Defendant Cowan to attend, which he did.

37. On July 28, 2016, the Special Committee formally engaged Union Square as its financial advisor. Union Square identified a list of three parties to contact. The three parties were subsequently contacted and two expressed an interest in a potential combination ("Party E" and "Party F"). Both parties entered into confidentiality agreements which included customary non-disclosure, non-use and standstill provisions, which expired upon the public announcement by Lionbridge that it entered into a merger agreement.

38. On August 8, 2016, Party C indicated it was no longer interested in participating in the process.

39. The Special Committee held a meeting on August 11, 2016, extending a special invitation to Defendant Cowan to attend. Defendant Cowan attended and discussed, among other things, recent discussions held with HIG and Parties A, C, D, E and F.

40. On August 18, 2016, HIG submitted an indication of interest to acquire the Company for $5.50 per share with a 30 day exclusivity period, the same as its initial indication. On August 19, 2016, Party D submitted an indication of interest to acquire the Company for $6.07 per share but did not request exclusivity. Prior to this deadline, Party A, Party E and Party F dropped out of the process.

41. Once HIG was informed it did not have the highest bid, it increased its offer to $5.60 per share.

42. Despite Party D's higher offer, the Company continued to engage in discussions with HIG. On September 29, 2016, HIG submitted a revised proposal to acquire the Company for $5.70 per share. On November 21, 2016, it revised its proposal to $5.75. Two days later, HIG and the Company entered an exclusivity agreement, despite the fact Party D's offer was still higher than HIG's third revised offer.

43. On December 11, 2016, the Board approved the Proposed Transaction for $5.75 per share. Concurrently therewith, Defendant Cowan and a family trust entered into letter agreements pursuant to which they will contribute rollover shares to Parent (the "Rollover Agreements"), totaling approximately 2% of the outstanding shares of Lionbridge common stock, in connection with the Proposed Transaction. The Proxy fails to include any other details regarding the Rollover Agreements other than they are being exchanged for equity interests in Parent.

44. On December 12, 2016, Lionbridge announced the Proposed Transaction, quoting Matt Lozow, a managing director at HIG, as stating:

> "We believe Lionbridge is a uniquely positioned global content and communications company with exceptional service and capabilities, strong relationships with its global client base, and tremendous potential for further growth," said Matt Lozow, a Managing Director at H.I.G. "Lionbridge is a strong company with innovative crowd-in-the-cloud business models and a world-class team. We look forward to working with Lionbridge management through the Company's next phase of growth and development."

45. Also, on December 12, 2016, Lionbridge filed a Form DEFA14A with the SEC containing a video transcript during which Defendant Cowan stated: "I will remain as CEO and management, of course, will remain in place."

46. In addition to remaining with the combined company, Lionbridge's officers and directors stand to receive transaction bonuses and other financial rewards as a result of the vesting of stock options.

*The Materially Incomplete Proxy Statement*

47. In addition, on January 5, 2017, Lionbridge filed the Proxy with the SEC in which the Lionbridge Board recommended that stockholders vote in favor of the Proposed Transaction. The Proxy failed to provide the Company's stockholders with material information and/or provided them with materially misleading information thereby rendering the stockholders unable to make an informed decision as to how to vote at the special shareholder meeting.

48. For instance, the Proxy also fails to disclose material information regarding Lionbridge's financial projections and Union Square's financial analyses. Specifically, the Proxy fails to disclose the "terminal year estimate of the unlevered free cash flow." This is important because the selected perpetuity growth rates were applied to such rates in connection with Union Square's *Discounted Cash Flow Analysis*. Further, the inputs and assumptions underlying the weighted average cost of capital ("WACC") were not disclosed.

49. The Proxy also fails to disclose the following projected financial information: (i) other expense (net); (ii) cash taxes; (iii) stock-based compensation expense; (iv) cash restructuring and other charges; (v) purchases of property and equipment; (vi) changes in working capital and other balance sheet accounts; (vii) depreciation and leasehold improvements amortization; (viii) amortization of acquisition-related intangible assets; and (ix) restructuring and other charges.

50. With respect to Union Square's *Comparable Public Company Trading Analysis,* the Proxy fails to disclose the individually observed multiples for each selected company and the full benchmarking analysis conducted by Union Square, which would provide the basis for the determination of the Company's growth rate and margin.

51. With respect to Union Square's *Precedent Transactions Analysis,* the Proxy fails to disclose the individually observed multiples for each selected transaction and the full benchmarking analysis conducted by Union Square.

52. Furthermore, the Proxy fails to disclose any conflicts of interest Union Square has, including the nature of any prior services Union Square has performed for Lionbridge, HIG or any of their affiliates.

53. Lastly, the Proxy fails to include the indications of interest received by the Company and discussed at the July 14, 2016 Special Committee meeting.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. Defendants have filed the Proxy Statement with the SEC with the intention of soliciting Lionbridge stockholder support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide the material information referenced above.

56. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Lionbridge, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

57. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

58. Specifically, and as detailed above, the Proxy Statement violates Section 14(a) and Rule 14a-9 because it omits material facts concerning the value of Lionbridge's shares and the financial analyses performed by Union Square in support of its fairness opinion.

59. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy Statement is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading.

60. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

61. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

62. The Individual Defendants acted as controlling persons of Lionbridge within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Lionbridge and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

63. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to the time the Proxy Statement was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

65. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

66. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

67. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

68. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in is favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

C.	Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

D.	Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.	Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 25, 2017                                        **LEVI & KORSINSKY, LLP**

_____
Stephanie A. Bartone (BBO # 684270)
Shane T. Rowley
733 Summer Street, Suite 304
Stamford, CT 06901
Tel: (212) 363-7500

C.	Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

D.	Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.	Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 25, 2017                                        **LEVI & KORSINSKY, LLP**

_____
Stephanie A. Bartone (BBO # 684270)
Shane T. Rowley
733 Summer Street, Suite 304
Stamford, CT 06901
Tel: (212) 363-7500